**MURRAY v. PAYNE, Director General of Railroads.**

(Circuit Court of Appeals, Third Circuit.　June 13, 1921.)

No. 2664.

**Courts ☞366(25)—State decision that railroad police are "public officers," and not servants of companies, followed.**

The decisions of the Supreme Court of New Jersey that railroad policemen, commissioned by the Governor pursuant to P. L. N. J. 1904, p. 323, § 4, though selected and paid by the railroad companies, were "public officers," and not agents of the companies, when performing their duties as peace officers, are controlling, and require a directed verdict for defendant in an action against the Director General of Railroads for the shooting of plaintiff by a railroad policeman.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit by Frank Murray against John Barton Payne, Director General of Railroads, to recover damages for injuries. Judgment for defendant, and plaintiff brings error. Affirmed.

Robert V. Kinkead, of Jersey City, N. J. (Thomas J. O'Neill and John A. Goodwin, both of New York City, of counsel), for plaintiff in error.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Collins & Corbin, of Jersey City, N. J. (George S. Hobart, of Newark, N. J., and Edward A. Markley, of Jersey City, N. J.; of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case, Frank Murray brought suit against John Barton Payne, Director General of Railroads, to recover damages for the injury inflicted upon him by a pistol shot fired by an alleged servant of the defendant. The proofs show the shooting was done by one Ford, who was serving, at the time, as a railroad policeman, to which position he was commissioned by the Governor of New Jersey, pursuant to the act of that state known as "An act concerning carriers (Revision of 1904)," P. L. 1904, p. 323, the fourth section whereof is printed in the margin.[1] At the conclusion of the proofs, the trial judge gave binding instructions for the defendant, saying:

"I have directed a verdict for the defendant under the law, as I see it, in view of several decisions in the New Jersey Supreme Court and the Court of Errors and Appeals which I have decided to follow."

His action in so doing is here assigned for error. The statute was, as we have seen, one of the state of New Jersey. It has received a construction by the Supreme Court of that state, and the trial court, pursuant to the opinion in Erie R. R. Co. v. Hilt, 247 U. S. 97, 38 Sup. Ct. 435, 62 L. Ed. 1003, relied on that court's construction of the act. The pertinent decisions construing and applying the act are Tucker v. Erie R. R. Co., 69 N. J. Law, 19, 54 Atl. 557, and Kraft v. Erie R. R. Co., not reported [November term, 1911]. In the first case, the Supreme Court of New Jersey said:

"It is plain, from a reading of the provisions of this statute, that, although these men were appointed on the application of the defendant company, received their compensation from it, and were subject to be divested of their powers by its act, they were nevertheless state officers, charged with the performance of public duties. They were, in law, police officers—constables —authorized to arrest persons guilty of criminal offenses or breaches of the peace, not only in cases where the property of the company was involved, but in every case where the crime was committed or the peace broken within the boundaries of any of the counties through which the company's railroad

---

[1] "On application of any railroad company, street railroad company, canal company or steamboat company, the Governor of the state may appoint such persons as the company may designate to act as policemen for such company, and shall issue to each person so appointed a commission, a copy of which shall be filed in the office of the secretary of state; every person so appointed and commissioned shall, in the counties traversed by the conveyances or route of such company, possess all the powers of policemen and of constables in criminal cases of the several townships and municipalities in such counties, and shall receive from the company by whom employed; such compensation as shall be agreed between such company and person; when on duty, except when employed as detective, he shall wear in plain view a metallic shield or device with the words 'railway police,' 'canal police,' or 'steamboat police' as may be appropriate, and the name or style of the company for whom appointed inscribed thereon; when any such company shall file in the office of the secretary of state a notice that it no longer requires the service of such policeman, his power as such shall cease and determine."

ran. For the proper discharge of their official duties, as well as for the proper exercise of their official powers, they were responsible, not to the defendant company, but to the state."

And in the last case the same court said:

"Under the rule of Tucker v. Erie Railroad Co., 40 Vr. 19, the defendant cannot be held for his act unless the plaintiff shows that his action was instigated by the company, or some of its officers or employees, and that what he did was done as the agent of the company and not solely of his own volition as a peace officer."

We think the facts of the present case bring it within these rulings. In shooting at the plaintiff when he was running away, Ford acted solely of his own volition as a peace officer, and neither the defendant, Director General, nor any of his employees were in any way connected with his act. In view of these decisions, the court below committed no error in giving binding instructions for defendant.

Its judgment is therefore affirmed.