ROSINA FIERRO, as Administratrix of the Estate of SAVINO FIERRO, Deceased, Respondent, v. NEW YORK CENTRAL RAILROAD COMPANY, Defendant, and THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

(Argued May 15, 1931; decided June 2, 1931.)

*E. R. Brumley* and *John M. Gibbons* for appellant. There was no evidence of negligence on the part of the defendant-appellant. (*C. & O. R. R. Co.* v. *Mihas,* 280 U. S. 102; *Chesapeake & Ohio Ry. Co.* v. *Nixon,* 271 U. S. 218; *Biernacki* v. *Pennsylvania R. R. Co.,* 45 Fed. Rep. [2d] 677; *O'Brien* v. *Erie R. R. Co.,* 210 N. Y. 96; *Chrystal* v. *Troy & Boston R. R. Co.,* 105 N. Y. 164; *Reading Co.* v. *Haldeman,* 20 Fed. Rep. [2d] 53; *Norfolk & W. Ry. Co.* v. *Kratzer,* 37 Fed. Rep. [2d] 522; *Davis* v. *Pennsylvania & R. Ry. Co.,* 276 Fed. Rep. 187; *Toledo, St. L. & W. R. R. Co.* v. *Allen,* 276 U. S. 165; *New Orleans & N. E. R. R. Co.* v. *Harris,* 247 U. S. 367.)

*Milton Speiser* and *Joseph Speiser* for respondent. The defendant-appellant was bound to use reasonable care. (*Thayer* v. *New York Central R. R. Co.,* 102 N. Y. Supp. 135; *Symond* v. *Brooklyn City R. R. Co.,* 256 N. Y. 69; *Conrad* v. *New York Central & H. R. R. R. Co.,* 121 N. Y. Supp. 774.)

O'BRIEN, J. Savino Fierro, an employee of the New York Central Railroad Company, while engaged in shoveling snow on the viaduct in Park avenue, New York city, was killed by a train operated by defendant New York, New Haven and Hartford Railroad Company. This action was discontinued as against the

New York Central and on the first trial the complaint was dismissed as against the New Haven. That judgment was reversed (*Fierro* v. *N. Y. C. R. R. Co.*, 229 App. Div. 776) and on this second trial a verdict for $20,000 against the New Haven was reduced to $10,000. The judgment entered thereon has been affirmed by a divided Appellate Division.

At nine o'clock in the morning Fierro was working near One Hundred and Sixth street. A gang of several other New York Central laborers was near One Hundred and Fourth street. Two of these fellow-workmen, witnesses for plaintiff, testified that as Fierro started to shovel he looked north along the viaduct. At that time the train, which within a few seconds struck him, was near One Hundred and Sixteenth street traveling in a southerly direction at forty miles an hour and plainly visible to him. Shortly thereafter the New York Central watchman on duty blew his whistle and notified the men that trains were about to pass in both directions. All except Fierro heard and heeded the warning and found safety on another of the four tracks. While these other workmen vigorously shouted an announcement to him of the oncoming train from the north he was struck by it and killed. Plaintiff's witnesses stated that nothing prevented decedent from seeing the train and the court charged, without objection, that, if he looked to the north and the train was in full view at One Hundred and Sixteenth street and he did not see it, he did not look within the meaning of the law. Also he charged, without objection, that no obligation exists on the part of the engineer to give warning to a person on the tracks unless he knows that he is there and that if the engineer sees a person on the tracks he has a right to assume that such person, if he has knowledge of the presence of the train, will act as an ordinary sensible individual will act and will leave the track. No issue of fact was created at the trial and we perceive no error in the charge. The only

question is whether, on these conceded facts, any liability rests upon defendant.

The decisions of the courts of this State as well as those of the Federal courts preclude any possibility of affirming this judgment. As early as *Chrystal* v. *Troy & Boston R. R. Co.* (105 N. Y. 164) was formulated a rule that a locomotive engineer, seeing a person on the track at a time when his train is perfectly visible, may assume that such person will leave the track in time to escape injury and, without imputation of negligence, may continue his run until he discovers that the person is heedless of danger. This rule was repeated and even more strictly applied in *O'Brien* v. *Erie R. R. Co.* (210 N. Y. 96) where we held that an engineer has the right to assume that one whom he sees on the track repairing it will leave it in time to escape injury and that a jury may not infer negligence from the engineer's failure to keep a vigilant outlook, to sound a warning or to slow down his train when rounding a curve at a speed of fifty miles an hour. Of course, when violation of a rule or a custom is shown, as in *Blanchard* v. *D., L. & W. R. R. Co.* (211 N. Y. 79), or when there has been an omission by the employer to establish a suitable system of warning, the law is necessarily different, but, in instances where such proof is absent, the doctrine of the Supreme Court is the same as that within our own jurisdiction. (*Chesapeake & Ohio Ry. Co.* v. *Mihas*, 280 U. S. 102.) Here there is no evidence that any rule or custom was violated. The New York Central employed a watchman to protect its employees and plaintiff's evidence is that he blew his whistle and shouted a warning. If negligence by either railroad company was present, it consisted in the failure of the servant of the New York Central rather than of this defendant to sound an alarm that was adequate. The principle in *Davis* v. *Phila. & R. Ry. Co.* (276 Fed. Rep. 187, 189) runs closely parallel with the one at bar. The court thus stated it: " There was no violation of a

statutory requirement, nor was there failure of compliance with any orders or recognized custom or rule adopted for the safety and protection of employees. Thus, in the absence of evidence showing that those in charge of the engine were aware of Davis' presence on the track where he was injured, or, having discovered him, recklessly ran him down, they should not be held guilty of negligence. To hold the contrary would indeed unreasonably burden those charged with the grave and responsible duty of operating the instruments of conveyance by rail. It would remove the entire responsibility of caring for the safety of those employed upon the track, and place it upon the shoulders of those having to do with the operation of the engine and train, involving attention to signals of every degree of importance, and entirely relieve those who have nothing but their own safety at stake." A driver guiding his engine over the network of tracks which approach the Grand Central Terminal at New York has the primary duty to operate his train and keep alert for signals. In his care rests the security of thousands of passengers who, above every other consideration, must be protected from collision or derailment. Unless it be shown by some evidence that he is ignorant of the existence of a custom by watchmen to warn workmen on the tracks or is aware of a violation of such a custom or recklessly runs them down he ought not to be and will not be held to be culpable. In exerting his faculties toward the conservation of his passengers' lives he fully performs his duty. In the observance of such a function are involved sufficient responsibility and gravity to engage the attention of any prudent man.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and HUBBS, JJ., concur.

Judgments reversed, etc.